## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DARNELL HOLLOWAY, | ) | CASE NO. 1:16CV3032 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JEFFREY HELMICK |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN LAZAROFF, | ) | JONATHAN D. GREENBERG |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Respondent. | ) | (Doc. Nos. 1, 9, 12, 13.) |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Darnell Holloway ("Holloway" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Holloway is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Holloway*, Cuyahoga County Court of Common Pleas Case No. CR-13-577833-B.  For the following reasons, the undersigned recommends the Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Holloway's conviction as follows:

{¶ 2} In September 2013, Holloway and codefendant Jamal Malone ("Malone") were charged in a six-count indictment for the death of Kishaun Stratford ("Stratford").[1] Count 1 charged them with aggravated murder.  Count 2 charged them with murder. Count 3 charged them with felonious assault.   Count 4 charged them with kidnapping. Count 5 charged them with discharge of a firearm on or near prohibited premises.[2] Count 6 charged Holloway with having a weapon while under disability. Count 7 charged Malone with having a weapon while under disability. On February 24, 2014, the matter proceeded to a joint jury trial, at which the following evidence was adduced.[3]

{¶ 3} In the evening hours of July 2, 2012, Stratford was shot and killed near his apartment located at 6110 Denison Avenue in Cleveland, Ohio.  Through their investigation, Cleveland police learned that Malone and Holloway were involved in Stratford's death.  Malone desired to kill Stratford because of an incident that occurred during the late evening hours of June 30, 2012, at a house on W. 31st Street owned by Stratford's cousins, Harold Moore ("Moore") and Martez Robertson ("Robertson").  Stratford and others would record rap music in Moore's homemade studio.  While sitting on the front porch of Moore and Martez's house, waiting to use Moore's studio, Malone was robbed by two assailants.  One of the assailants tried to disguise his voice, which led Malone to believe this assailant was Stratford.

{¶ 4} Asa Prude ("Prude"), Malone's cousin, was on his way to Moore's studio when Malone was robbed. Prude was also a longtime friend of Stratford.  When he arrived at Moore's house, he observed Malone sitting on the porch with a towel covering his mouth.  Malone was bleeding and a tooth was knocked out of his mouth.  Malone asked Prude to call "Chill" a.k.a. David Cousin ("Cousin") and ask him if he has seen Stratford because Malone wanted to finish working on a song together.  Cousin gave Stratford's number to Prude, and approximately five minutes later, Malone called Cousin asking if he had seen Stratford because Malone was trying to record a track with him.  Cousin testified that he thought that both calls were "odd," given

[1] Footnote No. 1 of the state appellate court decision provides: "At the time of the opinion, co-defendant Malone had an appeal pending with this court in *State v. Malone*, 8th Dist. Cuyahoga No. 101305."

[2] Footnote No. 2 of the state appellate court decision provides: "Counts 1-5 each carried one- and three- year firearm specifications."

[3] Footnote No. 3 of the state appellate court decision provides: "Each having a weapon while under disability charge was tried to the bench."

that he never observed Malone and Stratford record together.

{¶ 5} Then, at approximately 6:30 p.m. on July 2, 2012, Stratford left the apartment he shared with his girlfriend, Amada Gamez ("Gamez"), and rode his bicycle to his cousins' house on W. 31st Street.[4] After spending about 30 minutes in Moore's studio, Stratford rode his bike back to his apartment on Denison Avenue. On his way back home, Stratford decided to stop at the corner gas station to purchase a cigar.

{¶ 6} While riding to get the cigar, Stratford called Cousin at approximately 7:35 p.m. Stratford noticed a car parked on the street near Partner's Pub, a bar located across from Stratford's apartment. While talking to Cousin on the phone, he stated, "Is that Mal?" "Mal" and "Hot Mal" are Malone's nicknames. He told Cousin that he would call him back and ended their call. Surveillance video from Partner's Pub, which was played for the jury, depicts Stratford riding his bicycle up to a white Chevy Impala, later determined to be Malone's car. He parked his bicycle and approached the driver, later determined to be Malone. While Stratford spoke with Malone, the video depicts a man, later identified by Prude as Holloway, walking along the sidewalk. Holloway made an abrupt turn, runs up behind Stratford and fires his gun. Stratford is hit by two bullets, one in the lower back and one in the buttock. Holloway then jumped into the passenger side of the car and Malone drives away from the scene. After being shot, Stratford stumbled and fell onto a tree lawn on W. 62nd Street.

{¶ 7} Richard Nesmith ("Nesmith"), a resident in the area, was in his driveway washing his car when he observed an argument between a young black man on a bicycle, later determined to be Stratford, and people inside of a white car. He did not pay much attention to this argument because it was near a local bar, and it was normal to hear arguing. He first heard what he thought were fireworks and then heard a woman screaming. He ran to the end of driveway and observed the white car, later determined to be Malone's Chevy Impala, as it sped away and saw Stratford stumble across the street and fall against a wall. When he ran up to Stratford, Barbara Lydston ("Lydston"), Stratford's neighbor, was already on scene. Nesmith knows Lydston from the local neighborhood bar. Nesmith held Stratford's head up, and told him he was "going to be all right." He testified that Stratford was in shock. He was bleeding, his eyes were glazed, and he could barely speak.

{¶ 8} Lydston testified that she was outside her apartment when she heard gunshots. She then ran across the street and found Stratford lying face down with bullet holes in his back and buttocks. Barbara, a home health care provider, attempted to assist Stratford by taking the t-shirt from Stratford's shorts pocket and using it to apply

---

[4] Footnote No. 4 of the state appellate court decision provides: "Gamez is also the mother of his daughter."

pressure to the gunshot wounds. Lydston described Stratford as in shock, he could not believe he was shot. He was losing blood and was barely breathing. He could not move his head and was mumbling. Lydston asked him, "who did this?" Stratford responded by repeatedly saying "Mal" (Malone's nickname.) After naming "Mal," Stratford lost consciousness and Lydston began administering CPR.

{¶ 9} Gamez also arrived on the scene. Gamez was home at the time of the shooting and heard the gunshots at the same time as Nesmith and Lydston, but she initially thought it was fireworks. Gamez's neighbor informed her that Stratford had been shot, and Gamez rushed over to find Lydston administering CPR to Stratford.

{¶ 10} Paramedics and Cleveland police officers arrived on the scene. The paramedics transported Stratford to MetroHealth where he was pronounced dead. Officers on the scene learned that a white or gray, early 2000 model Chevy Impala was used in the murder. Homicide Detective Ignatius Sowa ("Sowa"), a 33–year veteran of the Cleveland Police Department, investigated the matter. He interviewed numerous witnesses, including Lydston, who mentioned someone named "Mal" as a suspect. He also interviewed Cousin, Robertson, and Moore, all who mentioned "Mal" and another man named "Aces" as suspects. Sowa later learned that "Mal" was Malone and "Aces" was Prude. Sowa also learned that a 2002 white Chevy Impala was registered to Malone.

{¶ 11} Sowa continued to investigate Stratford's murder through the summer and early fall of 2012, focusing on locating Malone, Prude, and the Chevy Impala. In October 2012, Sowa discovered that the title to that Impala had been transferred to Jontay Noles ("Noles"). Sowa contacted Noles and advised her that her car was the subject of a murder investigation. After obtaining consent from Noles, police searched the car and determined that there was a defect on the driver's side door consistent with it being hit by a bullet. The police also determined that the driver's side interior panel had been previously removed and reattached and the plastic foam beneath the previously removed interior panel had been disrupted.

{¶ 12} In November 2012, Malone was arrested on unrelated charges. When arrested, police discovered five different prescription pill bottles, with all five prescriptions made out to Holloway. Holloway was later arrested on unrelated charges in January 2013.

{¶ 13} The next major step in the investigation took place in December 2012, when Sowa reinterviewed Robertson and showed him the surveillance video. Robertson identified the car in the video as Malone's white Chevy Impala, however he was unable to identify the shooter.

{¶ 14} The investigation then stagnated until May 2013, when two key developments occurred. First, police located and interviewed Prude, who agreed to cooperate in

exchange for consideration from the prosecutor's office.  Prude was interviewed by detectives in May 2013 and again in June 2013.  During these interviews, Prude was shown the surveillance videos by a detective, who served as a blind administrator.  While watching the videos, Prude identified Stratford as the victim, Holloway as the shooter, and Malone's Chevy Impala as the car used in the murder.

{¶ 15} Second, John Young ("Young") became Holloway's cellmate in Cuyahoga County Jail.  After Holloway learned that he was being investigated in connection with a murder following Prude's viewing of the surveillance tape, Holloway discussed the murder with Young.  Young testified that Holloway told him that the murder occurred on the west side around Denison Avenue, a guy named "Hot Mal" had hired someone to shoot Stratford because Stratford had robbed "Hot Mal."

{¶ 16} In June 2013, Sowa interviewed Holloway as a suspect in Stratford's murder.  During this interview, Holloway repeatedly told Sowa that he did not know Malone, despite the fact that Malone and Holloway are cousins and Holloway's prescriptions were found on Malone when he was arrested in November 2012.  Following the interview with Sowa, Holloway became more concerned about being implicated in Stratford's murder and admitted to Young that he was the person who shot Stratford in exchange for $3,500 and a pound of marijuana.

{¶ 17} Young was not the only person that Holloway confided to while in the Cuyahoga County Jail. Rodell Smith ("Smith") was placed in Holloway's pod in June 2013. Holloway was friends with Smith's brother. Holloway began discussing with Smith details of a murder case he was concerned about. Holloway told Smith that he was present for the murder and that a car was involved in the murder.  Smith testified that he witnessed a conversation between Holloway and Malone.

{¶ 18} In July 2013, an Assistant Cuyahoga County Prosecutor received letters from both Young and Smith.[5]  Both letters contained details regarding Holloway's involvement in Stratford's murder.  Young and Smith testified they knew to write to this prosecutor because Holloway showed them paperwork relating to a search warrant that was executed on Holloway while in jail.  Young and Smith both asked for assistance in their respective cases in exchange for testifying against Holloway.  The prosecutor granted their requests, and both Young and Smith received plea agreements for lesser charges in their respective cases.

{¶ 19} At the conclusion of the state's case, the trial court granted Holloway's Crim.R. 29 motion only with respect to Count 4—kidnapping.  At the conclusion of trial, the jury found both Holloway and Malone guilty of the remaining counts, which

---

[5] Footnote No. 5 of the state appellate court decision provides: "The assistance prosecutor who received these letters is the same prosecutor who presided over Holloway's trial."

were Count 1—aggravated murder, Count 2—murder, Count 3—felonious assault, and Count 5—discharge of firearm on or near prohibited premises. The trial court found Holloway guilty of Count 6—having a weapon while under disability and found Malone guilty of Count 7—having a weapon while under disability. The matter was set for sentencing on April 10, 2014. At sentencing, the trial court merged the aggravated murder, murder, felonious assault, and discharge of firearm near prohibited premises charges. The court also merged the one-year firearm specification with the three-year firearm specification on all counts. The state elected to proceed to sentencing on Count 1—aggravated murder. The trial court sentenced Holloway to life in prison, with parole eligibility after 30 years, and sentenced Holloway to three years in prison on the firearm specification to be served prior to and consecutive with the life sentence. The trial court also imposed a 12–month sentence for the charge of having a weapon while under disability, to be served concurrently with the life sentence.

*State v. Holloway*, 2015 WL 1255788 at * 1-4 (Ohio App. 8th Dist. Mar. 19, 2015).

## II. Procedural History

### A.    Trial Court Proceedings

In September 2013, a Cuyahoga County Grand Jury charged Holloway with (1) one count of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) with one and three year firearm specifications (Count 1); (2) one count of murder in violation of Ohio Rev. Code § 2903.02(B) with one and three year firearm specifications (Count 2); (3) one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) with one and three year firearm specifications (Count 3); (4) one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3) with one and three year firearm specifications (Count 4); (5) one count of discharge of a firearm on or near prohibited premises in violation of Ohio Rev. Code § 2923.162(A)(3) with one and three year firearm specifications (Count 5); and (6) one count of having weapons under a disability in violation of Ohio Rev. Code § 2923.13(A)(2) (Count 6).[6]

---

[6] Counts 1 through 5 of the indictment jointly charged Holloway and co-defendant Jamal Malone. Count Six related only to Holloway. The indictment also included a seventh count,

(Doc. No. 9-1 at Exh. 1.)  Holloway pled not guilty.  (Doc. No. 9-1 at Exh. 2.)

On February 24, 2014, Holloway voluntarily waived his right to a jury trial with respect to Count 6 of the indictment; i.e., having weapons under a disability in violation of Ohio Rev. Code § 2923.13(A)(2).  (Doc. No. 9-1 at Exh. 3).  The state trial court accepted the waiver, finding Holloway had knowingly, voluntarily and intelligently waived his right to jury trial as to Count 6.  (Doc. No. 9-1 at Exh. 4.)

Holloway and his co-defendant, Jamal Malone, were tried jointly.  Jury trial commenced on February 24, 2014 as to the remaining counts in the indictment.  Pursuant to Ohio Crim. R. 29, Holloway made oral motions for acquittal at the close of the State's case.  *See* Docket Sheet for *State v. Holloway*, Case No. CR-13-577833-B.  The state trial court granted the motion with respect to Count 4 (i.e., the kidnapping charge) only.  *Id.*

On March 7, 2014, the jury found Holloway guilty of aggravated murder (Count 1), murder (Count 2), felonious assault (Count 3), and discharge of a firearm on or near prohibited premises (Count 5), as well as all associated 1 and 3 year firearm specifications.  (Doc. No. 9-1 at Exhs. 5, 6.)  On that same date, the trial court found Holloway guilty of having weapons while under a disability as charged in Count 6.  (Doc. No. 9-1 at Exh. 6.)

The trial court conducted a sentencing hearing on April 10, 2014, at which time Holloway was sentenced (in relevant part) as follows:

> The Court determines that Counts One, Two, Three and Five Merge for Sentencing.  Further that the one year firearm specifications merge into the three year firearm specifications on all counts and the defendant will be sentenced to only one 3 year term.  The State elects to proceed to sentencing on Count One.

---

which charged Malone with having weapons under a disability in violation of Ohio Rev. Code § 2923.13(A)(3).

* * *

The Court imposes a prison sentence at the Lorain Correctional Institution of Life. Defendant sentenced to a term of 3 years on the firearm specification to be served prior and consecutive to a sentence of life with parole eligibility after serving 30 full years.  Defendant sentenced to a term of 12 months on Count Six to be served concurrently with the sentence in Count One.

(Doc. No. 9-1 at Exh. 7.)

## B.  Direct Appeal

On April 24, 2014, Holloway, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (Doc. No. 9-1 at Exh. 8.)  In his appellate brief, Holloway raised the following four assignments of error:

> I. Appellant was denied his right to a fair trial as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when the court failed to order separate trials for him and his co-defendant.
>
> II. Appellant was denied his right to a fair trial as guaranteed by Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when the court failed to order separate trials and permitted statements attributed to the co-defendant which implicated Appellant in violation of *Bruton v. United States* and *State v. Moritz.*
>
> III. The trial court erred in denying Appellant's motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction.
>
> IV. Appellant's convictions are against the manifest weight of the evidence.

(Doc. No. 9-1 at Exh. 9.)  The State filed a brief in response.  (Doc. No. 9-1 at Exh. 10.)

On March 19, 2015, the state appellate court affirmed Holloway's convictions and prison sentences.  (Doc. No. 9-1 at Exh. 11.)

On April 27, 2015, Holloway, through new counsel, filed a Notice of Appeal with the

8

Supreme Court of Ohio.  (Doc. No. 9-1 at Exh. 12.)  In his Memorandum in Support of Jurisdiction, Holloway raised the following six Propositions of Law:

> I.     Defendant has been denied his constitutional right to a fair trial guaranteed by the United States and Federal Constitutions when the Court fails to order a separate trial which permitted statements attributed to the co-defendant to be offered which implicated defendant in the offense.
>
> II.    Defendant has been denied a fair trial when the court failed to order a separate trial where defendant was being jointly tried for aggravated murder and other felonies.
>
> III.   Defendant has been denied due process of law when the court overrules a motion for judgment of acquittal.
>
> IV.    A new trial should be ordered where evidence presented at a joint trial with another defendant was against the manifest weight of the evidence.
>
> V.     Defendant was denied a fair trial and due process of law when the court failed to declare a mistrial.
>
> VI.    Defendant was denied due process of law when the court sentenced the defendant for aggravated murder notwithstanding the verdict of the jury finding the defendant guilty of murder, a lesser offense.

(Doc. No. 9-1 at Exh. 13.)  The State did not file a response.

On October 28, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 9-1 at Exh. 14.)

**C.    Application to Reopen Appeal under Ohio App. R. 26(B)**

Meanwhile, on May 15, 2015, Holloway, through counsel, filed an Application to Reopen Appeal pursuant to Ohio App. R. 26(B) in the state appellate court.  (Doc. No. 9-1 at Exh. 15.)   In his Application, Holloway asserted appellate counsel was ineffective for failing to raise the following arguments on direct appeal:

> I.     Defendant was denied due process of law when the Court, at the conclusion of the instructions, gave an aiding and abetting instruction which was

9

flawed and did not contain all of the elements of aiding and abetting.

II.    The Court gave an impermissible instruction concerning a presumption to be drawn from the evidence as to the infliction of a wound.

III.    Defendant was denied due process of law when the Court allowed a conviction to be based on other causes.

IV.    Defendant was denied due process of law when the Court omitted any culpable mental state on Count Five.

V.    Defendant was denied due process of law when the Court did not require unanimity in a verdict as to which theory defendant was found guilty.

VI.    Defendant was denied due process of law when the Court sentenced the defendant for aggravated murder notwithstanding the verdict of the jury finding the defendant guilty of murder, a lesser offense.

VII.    Defendant was denied due process of law when the Court did not instruct concerning the firearm specifications that defendant have knowledge as an aider and abetter of the firearm specifications.

(Doc. No. 9-1 at Exh. 15.)  The State filed a brief in opposition.  (Doc. No. 9-1 at Exh. 16.)

On October 30, 2015, the state appellate court denied Holloway's Application.

(Doc. No. 9-1 at Exh. 17.)

On December 7, 2015, Holloway, through counsel, filed a Notice of Appeal to the Supreme Court of Ohio.  (Doc. No. 9-1 at Exh. 18.)  In his Memorandum in Support of Jurisdiction, Holloway raised the following assignments of error:

I.    Defendant has been denied due process of law when the trial court, at the conclusion of its jury instructions, gives an incomplete aiding and abetting instruction, which failed to contain all of the essential elements of aiding and abetting.

II.    The trial court when giving an impermissible instruction concerning a presumption to be derived from evidence as to the law infliction of a wound has denied Defendant due process.

III.    Defendant has been denied due process of la w when the Court allows a jury

10

to convict based on other causes when the statute and indictment specifically states that Defendant has caused the death of another.

IV.    Defendant has been denied due process of law when the Court omits any culpable mental state for the offense of discharging a weapon on or near a prohibited premises.

V.    Defendant has been denied a fair trial and due process of law when the Court does not give a unanimity instruction to the jury as to which theory the jury returns a verdict of guilty.

VI.    Defendant has been denied due process of law when the Court proceeded to sentence the Defendant for aggravated murder when the jury has returned a verdict of finding guilty of the lesser offense of murder.

VII.    Defendant has been denied due process of law when the Court fails to instruct the jury concerning the firearm specifications that a Defendant have knowledge that, as an aider and abettor, the principle offender possessed or was going to use the firearm.

(Doc. No. 9-1 at Exh. 19.)  The State filed a waiver of memorandum in response.  (Doc. No. 9-1 at Exh. 20.)

On February 10, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Holloway's appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 9-1 at Exh. 21.)

**D.    Federal Habeas Petition**

On December 8, 2016,[7] Holloway filed a *pro se* Petition for Writ of Habeas Corpus in this Court and asserted the following four grounds for relief:

**GROUND ONE**:    (Insufficiency of the evidence).  The State failed to present sufficient evidence in order to support the convictions on

---

[7]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  While the Petition herein did not arrive at the Court for filing until December 19, 2016, Holloway  states that he placed it in the prison mailing system on December 8, 2016.  (Doc. No. 1 at  13.)  Thus, the Court will consider the Petition as filed on December 8, 2016.

all counts.

**GROUND TWO**:     (Prejudicial jury instruction).  The trial court submitted a
jury instruction that allowed the jury to convict me without
being unanimous in its finding of guilt on all elements.

**GROUND THREE**:     (Omitted element).  The trial court failed to tell the jury
that they must find that I recklessly discharged a firearm
for the charge of, Discharging a firearm on or near a
prohibited premises.

**GROUND FOUR**:     (Joinder of Defendants).  The trial court prejudiced my case
by not severing my case from my co-defendants, thus
denied me a [sic] opportunity to call my co-defendant as a
witness.

(Doc. No. 1.)  On April 12, 2017, Warden Lazaroff ("Respondent") filed his Return of Writ.[8]

(Doc. No. 9.)

Holloway filed a Traverse on June 30, 2017.  (Doc. No. 12.)  Therein, Holloway

requested the Court grant him leave to amend his Petition to include claims of ineffective

assistance of appellate counsel.  (*Id*. at 2-6.)  On July 5, 2017, Respondent filed a Sur-Reply to

Holloway's Traverse, in which he opposed Holloway's request to amend his Petition.  (Doc.

No. 13.)


### III. Motion to Amend

It is well established that Rule 15 of the Federal Rules of Civil Procedure applies to a

habeas petitioner's request for leave to amend his petition.  *Mayle v. Felix*, 545 U.S. 644, 655,

125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).  *See also Glenn v. Coleman*, 2014 WL 4983661 at * 5

---

[8]  Respondent states Holloway is incarcerated at Mansfield Correctional Institution
("MANCI").  (Doc. No. 9 at 1.) The Court notes the current Warden of MANCI is Ed
Sheldon.  *See* http://drc.ohio.gov/manci.

(N.D. Ohio Oct. 6, 2014); *Shank v. Mitchell*, 2013 WL 3208554 at *3 (S.D. Ohio June 24, 2013).  Under Rule 15(a), a party may amend his or her pleadings once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading.  Fed. R. Civ. P. 15(a).  Otherwise, the party may amend only with the opposing party's written consent or by leave of court, which "shall be freely given when justice so requires."  *Id.  See also Mayle*, 545 U.S. at 655.

As Respondent filed his Return of Writ on April 12, 2017, leave of court must be obtained before Holloway may amend his Petition.  In determining whether leave should be granted, a habeas court should consider several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994).)  *See also Powers v. Beightler*, 2010 WL 649623 at * 1 (N.D. Ohio Feb. 19, 2010).  If a proposed amendment lacks merit on its face, it is deemed futile.  *See e.g., Moss v. United States*, 323 F.3d 445, 475 (6th Cir. 2003).  *See also Clark v. Ohio Adult Parole Authority,* 2017 WL 495508 at * 6 (S.D. Ohio Feb. 6, 2017); *Brown v. Clipper*, 2016 WL 5173331 at * 20 (N.D. Ohio Sept. 21, 2016); *Soler-Norona v. Brewer*, 2018 WL 1964677 at * 1 (E.D. Mich. April 26, 2018).  In the Sixth Circuit, leave to amend a pleading may be denied on grounds of futility only if the amended pleading would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Kottmyer v. Maas*, 436 F.3d 684, 691–92 (6th Cir. 2006); *Hall v. Clipper*, 2011 WL 2671310 at * 11 (N.D. Ohio July 8, 2011).

13

Here, Holloway seeks to amend his Petition to assert claims of ineffective assistance of appellate counsel. (Doc. No. 12.) He claims "the reason that I did not present this claim in my original petition was due to the fact that I did not have any of my appeal papers before me when I filed my petition. So when the State supplied myself and the Courts with all of the appellate briefs that is when I became aware of how my claims were formulated." (*Id.* at 3.) Holloway argues "my ineffective assistance of appellate counsel [claim] stems from the claims presented in my habeas corpus petition now before the Court," stating "they were sub-claims to my claim of ineffective assistance of appellate counsel that I presented during my Ohio App. R. 26(B) motion." (*Id*. at 4.) He concludes by stating "if the court do not allow me to amend my petition, I ask you to consider my ineffective assistance of appellate counsel as 'cause' and 'prejudice' in order to overcome any procedural default." (*Id*.)

Holloway's request appears to be in response to the Respondent's argument (as set forth in the Return) that Holloway's Second and Third Grounds for Relief are procedurally defaulted because they were not fairly presented to the state courts as independent claims. Rather, Respondent asserts Holloway only presented these Grounds as ineffective assistance of appellate counsel claims in his 26(B) Application, which Respondent argues is insufficient to preserve the underlying claims for habeas review. (Doc. No. 9 at 13-15, 24-25, 29-31.)

At the outset, the Court notes Holloway did not request leave to amend his Petition until filing his Traverse on June 30, 2017, over six (6) months after the filing of his Petition. Nor did he file a separate Motion to Amend or clearly caption his Traverse as including a request to amend his Petition. More significantly, Holloway's request to amend is unclear. As noted *supra*, Holloway's 26(B) Application contains seven separate claims of alleged ineffective

assistance of appellate counsel.  (Doc. No. 9-1 at Exh. 15.)  Holloway does not clearly articulate whether he seeks to amend his Petition to raise all of these claims or certain particular ones.  If the latter, Holloway does not identify which particular ineffective assistance of counsel claims he seeks to add to the instant habeas Petition.

Nonetheless, out of an abundance of caution and in light of Holloway's *pro se* status, the Court will allow amendment of the Petition as follows.  Holloway states he did not include the correct "formulation" of his habeas claims because he did not have his "appellate papers" when he filed his habeas Petition.  The Court interprets this to mean that Holloway meant to assert his habeas claims in the manner (or "formulation") set forth in his 26(B) Application; i.e., as ineffective assistance of appellate counsel claims.  Holloway further states that his present habeas claims "stem from" the claims set forth in his 26(B) Application.  In this regard, the Court notes Grounds Four and Five of Holloway's 26(B) Application [9] correspond to his second and third habeas grounds for relief.  (Compare Doc. No. 1 with Doc. No. 9-1 at Exh. 15.)

Thus, the Court will construe Holloway's Petition as including the ineffective assistance of appellate counsel claims set forth in Grounds Four and Five of his 26(B) Application.  These Grounds will hereinafter be referred to as habeas Grounds Five and Six.  As both parties included argument regarding the underlying issues associated with these Grounds (and given the late stage of these proceedings), the Court will not order additional briefing and will resolve

---

[9] As set forth *supra*, Ground Four of Holloway's 26(B) Application asserts appellate counsel was ineffective for failing to argue on direct appeal that Holloway "was denied due process of law when the Court omitted any culpable mental state on Count Five."  (Doc. No. 9-1 at Exh. 15.)  Ground Five asserts appellate counsel was ineffective for failing to argue on direct appeal that Holloway "was denied due process of law when the Court did not require unanimity in a verdict as to which theory defendant was found guilty."  (*Id.*)

15

the Petition based on the record before it.

Accordingly, and as set forth above, the Court will grant Holloway's request to amend his Petition as follows. The Court will construe Holloway's Petition as including the ineffective assistance of appellate counsel claims set forth in Grounds Four and Five of his 26(B) Application.

### IV. Legal Standards

**A.**      **Exhaustion and Procedural Default**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id. See also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally

16

defaulted.[10]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In

---

[10] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong

18

evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50. Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.	Review on the Merits**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

19

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v. Smith*, ⸻ U.S. ⸻, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.*

at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

## V. Analysis of the Petition

### A.    Merits Review

#### 1.    Ground One

In his first ground for relief, Holloway argues the State failed to present sufficient evidence to support his convictions.  (Doc. No. 1 at 5.)  He claims the state appellate court "relied on an unreasonable determination of the facts pursuant to 28 U.S.C. § 2254(d)(2)" when it concluded State's witness Asa Prude recognized Holloway on surveillance video by his body weight.  (Doc. No. 12 at 15-16.)  Holloway maintains "a person's body weight is not something identifiable on this planet of over 7+ billion people . . . so for the court of appeals to say I was identified from my body weight is something that 'defies physical laws and is incredible as a matter of law.'"  (*Id*. at 17.)

Holloway also argues the state appellate court made an unreasonable determination of clearly established federal law under 28 U.S.C. § 2254(d)(1).  (*Id*. at 18.)  He claims "the only witnesses or evidence that implicate me in this crime was the testimony of state witnesses . . . Mr. Prude, Mr. Young and Mr. Smith."  (*Id*.)  Holloway asserts these witnesses' testimony was unreliable and insufficient to support his convictions, arguing in particular that the testimony of jailhouse informants Mr. Young and Mr. Smith raise "serious questions of credibility."  (*Id.* at 19.)  Holloway maintains "there is no evidence that shows that I directly shot Mr. Stratford and there is sufficient evidence that 'Mal' [i.e. co-defendant Malone] had the motive to want to shoot Mr. Stratford."  (*Id.* at 21.)

Respondent argues the state appellate court's rejection of Holloway's sufficiency of the

evidence claim is not based on an unreasonable determination of the facts and is not contrary to or an unreasonable application of clearly established Federal law.  (Doc. No. 9 at 22.)  He maintains the state appellate court reasonably concluded that the testimony of Mr. Prude, jailhouse informants Young and Smith, and Detective Sowa is sufficient to support Holloway's convictions for aggravated murder, murder, felonious assault, discharge of a firearm on or near prohibited premises, and having weapons while under a disability.  (*Id*. at 22-24.)

The record reflects Holloway raised a sufficiency of the evidence claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 9-1 at Exhs. 9, 13.) The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 32} In the third assignment of error, Holloway argues the state failed to establish that he murdered Stratford.  He contends that there is no direct physical evidence that links him to the murder.

> {¶ 33} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008–Ohio–6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

>> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> {¶ 34} We are mindful that, in considering the sufficiency of evidence, a certain perspective is required. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).  "This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id*., quoting *Atkins v. State*, 115 Ohio St. 542, 546, 155 N.E. 189 (1926).  It is the minds of the jurors, rather than a reviewing court, that must be convinced. *State v. Thomas*, 70

Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The trial court recognized this in denying Holloway's Crim.R. 29 motion to dismiss (except for Count 4—kidnapping) when it stated: "this case I think does cry out for somebody to evaluate the facts and to weigh the credibility of the witnesses and that's the jury's position[.]"

{¶ 35} In the instant case, the evidence presented by the state was sufficient to sustain Holloway's convictions. Nesmith testified that he was in his driveway when he observed an argument between Stratford and people inside of a white car. After hearing gunshots and a woman screaming, he observed the white car speeding away and Stratford stumbling across the street. When he ran up to Stratford, Lydston was already on scene assisting Stratford. Both Nesmith and Lydston testified that Stratford was in shock. He was bleeding, his eyes were glazed, and he could barely speak. Lydston asked him, "who did this?" Stratford responded by repeatedly saying "Mal."

{¶ 36} Prude, who is Holloway's cousin, identified Holloway from the surveillance video as the shooter. Prude wrote Holloway's name next to the shooter on a still frame of the video. He testified that he knew Holloway "from his body weight." The two jailhouse informants, Young and Smith, testified to Holloway's involvement in the murder. While Young and Holloway were cellmates, Holloway told Young that a murder occurred around Denison Avenue, a guy named "Hot Mal" hired someone to shoot the victim, and there was a motive for the murder. Young further testified that Holloway admitted to being the shooter and that Holloway was concerned because there were cameras at the scene. Smith testified that he had a conversation with Holloway concerning a murder. Holloway indicated to Smith that he was present for the murder. Smith further testified that he observed Holloway and Malone speaking with one another when they were in jail. Sowa, the homicide detective assigned to Stratford's murder, testified Holloway repeatedly denied that he knew Malone. However, when Malone was arrested, he was found with prescription pill bottles in Holloway's name.

{¶ 37} Based on the foregoing, when viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.

{¶ 38} Therefore, the third assignment of error is overruled.

*Holloway*, 2015 WL 1255788 at * 7-8.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct.

24

1068, 25 L.Ed.2d 368 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *Id.  See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70*.) See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary

25

showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Holloway's convictions (for aggravated murder, murder, felonious assault, discharge of a firearm on or near prohibited premises, and having weapons while under a disability) were supported by sufficient evidence. In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law. As noted in the state appellate court opinion, State's witness, Asa Prude, testified he identified Holloway as the shooter after a police detective showed him portions of video surveillance tape of the shooting. (Doc. No. 9-3 at Tr. 326-333.) Prude explained he knew both Malone, Holloway, and the victim, Kishaun Stratford. (*Id*. at Tr. 295-297.) He stated he was, in fact, related to both Malone and Holloway, who were themselves cousins. (*Id*. at Tr. 295-296.) Prude testified that, the day before the shooting, Malone called him and indicated he (Malone) believed Stratford might have robbed him. (*Id*. at 304-306.) Malone asked Prude to call David Cousins (i.e., "Chill") and ask if Cousins had seen Stratford. (*Id*. at Tr. 306-308.) The next day, Prude learned Stratford had been shot. (*Id*. at Tr. 315-317.) Prude later called Malone, who denied knowing anything about the shooting. (*Id*. at Tr. 317-318.)

26

Some time later, Prude met with the police and looked at portions of video surveillance tape from the night of the shooting.  (*Id*. at Tr. 326.)  Prude identified Holloway as the shooter based on his "body weight."  (*Id*. at Tr. 327.)  Specifically, Prude testified as follows:

Q:     Now, when you met with the detectives, they had you look at video surveillance tape, correct?

A:     Yes.

Q:     Tell us what you recall about watching that videotape.

A:     A white car pulling out a side street like under a tree, a man came riding on a bike, and probably like two minutes to three, another one come walking behind him and then they cut it off.

Q:     I'm going to show you what's been marked as State's Exhibit 111, photograph or still frame.  Do you recognize that?

A:     Yes.

Q:     Some handwriting on there?

A:     Yes.

Q:     Whose handwriting?

A:     Mine.

* * *

Q:     I notice over here on the left-hand side you have Darnell [Holloway] written as this guy on the sidewalk?

A:     Yes.

Q:     How do you know that's Darnell from this video?

A:     From his body weight.

* * *

Q:     Now, you know Darnell.  He's related to you in some way, right?

27

A:      Yes.

Q:      You know him well enough to know his body size?

A:      Yes.

* * *

Q:      All right.  Was there any hesitation on your part when you saw the figure
        there that you circled and labeled as Darnell Holloway?  Was there any
        hesitation on your part?

A:      Yes.

Q:      What was the hesitation?

A:      Because I couldn't see his face.

* * *

**Q:      If you were uncertain would you have put Darnell's name there?**

**Mr. Weintraub:        Objection.**

**The Court:            That I'll overrule.  Go ahead and answer.**

**A:    No.**

(*Id*. at Tr. 326-333) (emphasis added).  Prude also testified the detective that showed him the

videotape did not "give him any names."  (*Id*. at Tr. 338.)  Defense counsel (for both Malone

and Holloway) cross-examined Prude extensively.  (*Id*. at Tr. 364-407.)

The State also presented the testimony of "jailhouse snitches" John Young and Rodell

Smith.  Young testified he was in the same pod with Holloway in the Cuyahoga County Jail

from May to July 2013.  (Doc. No. 9-5 at Tr. 769.)  He stated Holloway voiced concern he was

being investigated for a murder that occurred in the Denison area.  (*Id*. at Tr. 771-772.)  Young

testified Holloway told him "there was motive," "he was not alone," and "somebody had been

28

arrested." (*Id.* at 772-773.)  Holloway became more concerned after detectives interviewed him about the shooting.  (*Id.* at Tr. 774.)  Holloway told Young the detectives had "cameras and all of this."  (*Id.* at Tr. 777.)  According to Young, Holloway said he was the shooter and had been compensated for his involvement.  (*Id.* at Tr. 778, 782.)  Young then wrote a letter to the prosecutor in Holloway's case, offering to provide information in exchange for help with a pending criminal case against him.[11]  (*Id.* at Tr. 778-781.)

Smith also knew Holloway from the County Jail.  (*Id.* at Tr. 824.)  Smith testified Holloway talked him to about his concern that "a murder case was coming his way."  (*Id.* at Tr. 826.)  According to Smith, Holloway told him he was present for the murder.  (*Id.* at Tr. 827.)  Smith also testified he saw Holloway and Malone speaking with each other at the Jail.  (*Id.* at Tr. 829.)  Like Young, Smith wrote a letter to the prosecutor in Holloway's case, offering to provide information in exchange for help with a pending criminal case against him.[12]  (*Id.* at Tr. 829-832.)  Both Smith and Young were extensively cross-examined by defense counsel.  (*Id.* at Tr. 783-805, 833-845.)

Lastly, the State introduced the testimony of Detective Ignatius Sowa, a homicide detective assigned to the Stratford investigation.  Detective Sowa outlined the steps taken

---

[11] Young testified he learned the prosecutor's name when he looked at "paperwork" Holloway had received from the Prosecutor's Office regarding Stratford's murder.  (*Id.* at Tr. 778.)  He stated that, in exchange for information, he obtained a plea bargain in a pending criminal case which reduced the charges from a first degree felony to a fourth degree felony.  (*Id.* at Tr. 781.)

[12] Smith testified he saw the prosecutor's name on a search warrant that was issued for Holloway's bunk area.  (*Id.* at Tr. 830.)  He stated that, in exchange for information, he obtained a plea deal in a pending criminal case which reduced the charges from a fourth degree felony to a first degree misdemeanor.  (*Id.* at Tr. 847.)

during the investigation, including speaking with Prude in October 2012.  (Doc. No. 9-6 at Tr. 1014.)  After receiving advice from the prosecutor's office, Detective Sowa arranged to have a "blind administrator" show Prude portions of the video surveillance tape.  (*Id*. at Tr. 1014-1015.)  Detective Bowers (who had no knowledge of or connection to the case) showed Prude the tape and wrote a report summarizing Prude's response.  (*Id*.)  Detective Sowa then took a written statement from Prude, and asked him to identify the participants by marking a still image from the video.  (*Id*. at Tr. 1015.)  At that point, Detective Sowa testified he considered Holloway a suspect and arranged an interview.  (*Id*. at Tr. 1020.)  Detective Sowa stated he read Holloway his Miranda rights and Holloway agreed to speak to him.  (*Id*.)  During this interview, Holloway repeatedly denied knowing Malone.  (*Id*. at Tr. 1021.)  Detective Sowa testified five prescription pill vials belonging to Holloway were later found in Malone's possession.  (*Id*. at Tr. 1022-1023.)

The state appellate court reasonably concluded that sufficient evidence supported the jury's and state court's findings as to each element of the charges at issue[13] based on the above

---

[13] As noted above, Holloway stood trial on charges of aggravated murder, murder, felonious assault, and discharge of a firearm near a prohibited premises (all with one and three year firearm specifications), as well has having weapons under disability.  (Doc. No. 9-1 at Exh 1.)  The aggravated murder charge alleged Holloway "did purposely, and with prior calculation and design, cause the death of Kishawn Stratford."  (Doc. No. 9-1 at Exh. 1.)  The murder charge alleged Holloway "did cause the death of Kishawn Stratford, as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, to wit: felonious assault, in violation of Section 2903.02 of the Revised Code."  (*Id*.)  The felonious assault charge alleged he "did knowingly cause serious physical harm to Kishawn Stratford."  (*Id*.)  The discharge of a firearm charge alleged Holloway "did discharge a firearm upon or over a public road or highway and the violation caused serious physical harm to a person Kishawn Stratford."  (*Id*.)  The weapons under disability charge alleged Holloway "did knowingly acquire, have, carry, or use any firearm or dangerous ordnance and he was under indictment for or has been convicted of any felony offense of violence."  (*Id*.)

witnesses' testimony.  There was ample evidence Holloway purposely, and with prior calculation and design, caused the death of Stratford by discharging a firearm upon a public road or highway.  As noted above, the police recovered videotape surveillance footage of the shooting itself, which was played for the jury at trial.  Prude, who knew (and in fact was related to) Holloway, testified he viewed the footage and identified Holloway as the individual who walked up behind Stratford and shot him.  Young testified Holloway told him he was the shooter, while Smith testified Holloway told him he had been present for the murder.  Detective Sowa testified Holloway repeatedly denied knowing Malone, despite the fact they are related and Holloway's prescriptions were later found in Malone's possession.  It was not unreasonable for the state appellate court to conclude this testimony was sufficient to establish the elements of aggravated murder, murder, felonious assault, discharge of a firearm near a prohibited premises, having weapons under disability, and the associated firearm specifications.

Holloway argues state appellate court "relied on an unreasonable determination of the facts pursuant to 28 U.S.C. § 2254(d)(2)" when it concluded Prude recognized Holloway on surveillance video based on his body weight.  (Doc. No. 12 at 16.)  The Court disagrees.  As noted above, Prude testified he knew Holloway and was, in fact, related to him.  Prude acknowledged he could not see Holloway's face on the video footage, but testified he "knew [Holloway] well enough to know his body size" and would not have identified him if he was uncertain it was him.  Based on this testimony, the Court cannot say it was an unreasonable determination of the facts to conclude Prude recognized Holloway on the video surveillance footage.

Holloway also argues the state appellate court made an unreasonable determination of

clearly established federal law because "the only witnesses or evidence that implicate me in this crime was the testimony of state witnesses . . . Mr. Prude, Mr. Young and Mr. Smith." (Doc. No. 12 at 18.) He asserts these witnesses' testimony was unreliable and insufficient to support his convictions, arguing in particular that the testimony of jailhouse informants Mr. Young and Mr. Smith raise "serious questions of credibility." (*Id.* at 19.) However, it is well established the credibility of witness testimony was outside the scope of the state appellate court's consideration of Holloway's claim of insufficient evidence. *See Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Rather, the state appellate court properly considered all of the evidence in the light most favorable to the State and determined there was sufficient evidence to convict him. The standard of review applied by the state appellate court coincides with the standard for sufficiency of the evidence set forth in *Jackson*, *supra*. Holloway points to no federal legal precedent requiring the state appellate court, in the context of a challenge to the sufficiency of the evidence, to engage in the evidence-weighing that he requests. Based on the above and applying the "double deference" required under the AEDPA, the Court is unable to say the state appellate court's decision "was so unsupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S.Ct. at 2065.

The state court reasonably rejected Holloway's argument there was insufficient evidence to support his convictions, and there is no basis for this Court to conclude that the state court decision in this case involved an unreasonable determination of the facts or was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, it is recommended the Court find Holloway's first ground for relief lacks merit.

    **2.**    **Ground Four– *Bruton* violation**

In his Fourth Ground for relief, Holloway argues the trial court erred in failing to sever his case from that of his co-defendant, Jamal Malone.  (Doc. No. 1 at 9.)  He further asserts the trial court's failure to sever violated his constitutional rights because it denied him the opportunity to call Malone as a witness.  (*Id.*)

As Respondent correctly notes, this Ground contains two, separate sub-claims; i.e., (1) joinder; and (2) denial of the opportunity to examine co-defendant in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).  With regard to Holloway's joinder argument, Respondent argues this claim is procedurally defaulted and, further, that Holloway has failed to establish cause or prejudice for the default.  (Doc. No. 9 at 15, 26-38.)  With regard to Holloway's *Bruton* claim, Respondent argues this claim is noncognizable "because there is no factual premise that triggers a constitutional question."  (*Id.* at 40.)  Respondent further asserts the state court's adjudication of this claim was not unreasonable.  (*Id.* at 40-41.)

The Court will address the joinder sub-claim of Holloway's Fourth Ground for Relief *infra*, the context of its discussion of procedurally defaulted claims.

With regard to the *Bruton* sub-claim of Holloway's Fourth Ground for Relief, the record reflects Holloway raised this claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 9 at Exhs 9, 13.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 28} In the second assignment of error, Holloway argues the joint trial denied him from his Sixth Amendment right to confront and cross-examine his codefendant (Malone). He contends that the trial court violated the rule announced in *Bruton*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and adopted by Ohio in *Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268 (1980).

33

{¶ 29} In *Bruton*, the United States Supreme Court found that the introduction of the accomplice's out-of-court confession at defendant's trial violated the defendant's Sixth Amendment right to cross-examine witnesses against him. *Id*. at 126. In *Moritz*, the Ohio Supreme Court adopted the Supreme Court's holding in *Bruton*. The court held that:

> An accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused.

Moritz at paragraph one of the syllabus, citing *Bruton*.

{¶ 30} A review of the record, however, reveals that there was not a single statement attributed to Malone that implicated Holloway. The statements attributed to Malone focused on Malone's motive for killing Stratford, Malone's efforts to contact Stratford prior to the murder, and Malone's transfer of the title to the Chevy Impala to Noles. None of these statements referenced Holloway or incriminated Holloway in any way.

{¶ 31} Accordingly, the second assignment of error is overruled.

*Holloway*, 2015 WL 1255788 at * 6-7.

In *Bruton*, the Supreme Court held a defendant is deprived of his rights under the

Confrontation Clause when a co-defendant's incriminating confession is introduced at their joint

trial, even if the jury is instructed to consider that confession only against the co-defendant.

*Bruton*, 391 U.S. at 132.  "As *Bruton* and subsequent cases make clear, *e.g., Richardson*, 481

U.S. at 208, 107 S.Ct. at 1707, *Cruz v. New York*, 481 U.S. 186, 193, 107 S.Ct. 1714, 1719, 95

L.Ed.2d 162 (1987), the extrajudicial statement must clearly implicate the defendant in order for

there to be a violation of the defendant's sixth amendment right to confront adverse witnesses."

*Vincent v. Parke*, 942 F.2d 989, 991 (6th Cir. 1991).  *See also Hodges v. Rose*, 570 F.2d 643, 646

(6th Cir. 1978); *Garcia-Dorantes v. Warren*, 769 F.Supp.2d 1092, 1111 (E.D. Mich. 2011) ("No

*Bruton* violation occurs where the statement does not expressly implicate the defendant in the

charged offense and is not 'powerfully incriminating' on its face.") (quoting *Bruton*, 391 U.S. at 208).  The *Bruton* rule is applicable to the state as well as the federal courts.  *See Vincent*, 942 F.2d at 991.

Here, the state appellate court reasonably concluded Holloway failed to demonstrate a violation of *Bruton*.  As noted *supra*, Holloway and his co-defendant, Jamal Malone, were tried jointly and neither testified at trial.  However, Holloway has not directed this Court's attention to any trial testimony indicating Malone identified Holloway as the shooter or otherwise implicated him in Stratford's murder.  While several witnesses testified Malone and Holloway knew each other, this testimony does not, standing alone, expressly implicate Holloway in the crime.[14] Indeed, Holloway has not identified (and this Court is not aware of) any clearly established federal law holding such testimony is sufficient to demonstrate a *Bruton* violation.

Accordingly, the Court finds the state appellate court reasonably applied clearly established federal law when it considered Holloway's argument his constitutional rights were violated under *Bruton*.  It is therefore recommended the Court find this sub-claim of  Holloway's fourth ground for relief is without merit.

### 3. Grounds Five and Six– Ineffective Assistance of Appellate Counsel

As set forth *supra*, the Court permitted Holloway to amend his Petition to assert two claims of ineffective assistance of appellate counsel.  In Ground Five, Holloway asserts appellate counsel was ineffective for failing to argue on direct appeal that he was denied due process of law when the trial court omitted any culpable mental state as to the charge of discharge of a

---

[14] The Court notes that, while Rodell Smith testified he saw Holloway and Malone speak to each other while both were detained at the County Jail, the trial court did not allow Smith to testify regarding the content of that alleged conversation.  (Doc. No. 9-5 at Tr. 829.)

firearm on or near prohibited premises in violation of Ohio Rev. Code § 2923.162(A)(1).  In Ground Six, Holloway asserts appellate counsel was ineffective for failing to argue on direct appeal that he was denied due process of law when the trial court did not require unanimity in the verdict with regard to whether Holloway was the principal offender or an aider and abettor.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

36

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington*, 562 U.S. at105. *See also Kennedy v. Warren*, 428 Fed. App'x 517, 520 (6th Cir. May 3, 2011); *Phillips v. Sheldon,* 2014 WL 185777 at * 14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

    **a.**      **Ground Five: Ineffective Assistance of appellate counsel based on failure to challenge trial court's jury instruction omitting culpable mental state in Count Five**

37

In Ground Five, Holloway asserts appellate counsel was ineffective for failing to argue on direct appeal that he was denied due process of law when the Court omitted any culpable mental state in the jury instruction regarding the charge of discharge of a firearm on or near prohibited premises in violation of Ohio Rev. Code § 2923.162(A)(1).[15]  (Doc. No. 12 at 10-13.)

Holloway raised this claim in his 26(B) Application to the state appellate court and again on appeal to the Supreme Court of Ohio.  (Doc. No. 9-1 at Exhs. 15, 19.)  The state appellate court considered this claim on the merits and rejected it as follows:

{¶ 2} In order to establish a claim of ineffective assistance of appellate counsel, Holloway is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990).

{¶ 3} In *Strickland*, the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is all too tempting for a defendant to second-guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission

---

[15] The trial court instructed the jury as to this charge as follows: "Count 5, discharge of a firearm on or near a prohibited premises.  Defendants Jamal T. Malone and Darnell Holloway are charged in Count 5 of the indictment with discharge of a firearm on or near a prohibited premises in violation of Revised Code Section 2923.162(A)(3).  Before you can find defendant Jamal T. Malone and/or defendant Darnell Holloway guilty of discharge of a firearm on or near a prohibited premises, you must find beyond a reasonable doubt that on or about the 2nd day of July 2012 in Cuyahoga County, Ohio, defendant Jamal T. Malone and/or defendant Darnell Holloway did discharge a firearm upon or over a public road or highway and the violation caused serious physical harm to a person, Kishaun Stratford. Now, the terms firearm, cause, and serious physical harm have been previously defined for you.  The same definitions apply herein.  Discharge means the act of shooting a projectile or weapon. Public road means any public road, highway, street, avenue, alley, and/or bridge within a political subdivision.  Public road does not include berms, shoulders, rights or way or traffic control devices.  Highway means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for the purpose of vehicular traffic."  (Doc. No. 9-7 at Tr. 1255-1256.)

was deficient, especially when examining the matter in hindsight. Thus, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*.

* * *

¶ 14} Holloway's fourth proposed assignment of error is that

> Appellant was denied due process of law when the court omitted any culpable mental state on count five.

{¶ 15} Holloway, through his fourth proposed assignment of error, argues that the trial court's jury instruction as to Count 5, discharge of a firearm on or near prohibited premises, failed to include any culpable mental state. R.C. 2923.162, discharge of firearm on or near prohibited premises, provides in pertinent part that

> (A) *No person shall do any of the following*:
>
> (1) Without permission from the proper officials and subject to division (B)(1) of this section, discharge a firearm upon or over a cemetery or within one hundred yards of a cemetery;
>
> Subject to division (B)(2) of this section, discharge a firearm on a lawn, park, pleasure ground, orchard, or other ground appurtenant to a schoolhouse, church, or inhabited dwelling, the property of another, or a charitable institution;
>
> Discharge a firearm upon or over a public road or highway.

(Emphasis added.)

{¶ 16} In *State v. Cheraso*, 43 Ohio App.3d 221, 223, 540 N.E.2d 326 (1988), the court found that " * * * when a statute reads, 'No person shall * * *,' absent any reference to the requisite culpable mental state, the statute is clearly indicative of a legislative intent to impose strict liability." Because R.C. 2923.162(A)(3) provides that "[n]o person shall * * * [d]ischarge a firearm upon or over a public road or highway," it is a strict liability offense, which may be proven without regard to a culpable mental state.  Therefore, the trial court's instruction was proper and Holloway has failed to establish any prejudice through his fourth proposed assignment of error.

*State v. Holloway*, 2015 WL 6778526 at * 1, 4 (Ohio App. 8th Dist. Oct. 30, 2015).

To warrant habeas relief, a petitioner must demonstrate the jury instructions were both erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights. *Id. See also Mason v. Mitchell,* 320 F.3d 604, 638 (6th Cir. 2003) ("On habeas review, errors on instructions are not reviewable unless they deprive a defendant of constitutional due process."); *Weber v. Warden, Warren Correctional Inst*., 886 F. Supp.2d 749, 757 (S.D. Ohio 2012) ("The standard on habeas review is "highly demanding"—erroneous jury instructions violate "fundamental fairness" only in very narrow circumstances.") (citing *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir.2000)). "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *Whalen v. Trippett*, 2000 WL 977342 at * 3 (6th Cir. July 7, 2000) (citing *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998)). *See also Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) ("When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'") (quoting *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)). Moreover, "[f]ederal habeas courts must also bear in mind that a single instruction is but one, small piece of a long trial containing a quantity of evidence and various instructions, and should judge an instruction's impact in context instead of 'in artificial isolation.'" *Whalen*, 2000 WL 977342 at * 3 (quoting *Cupp,* 414 U.S. at 146-147.)

40

Here, the Court finds the state appellate court reasonably determined appellate counsel was not ineffective for failing to challenge the trial court's jury instruction regarding the discharge of a firearm charge. The state appellate court found that, under Ohio law, the offense of discharge of a firearm is a strict liability offense and, therefore, could be proven without a culpable mental state. Thus, the state appellate court determined Holloway was not prejudiced by appellate counsel's failure to request a jury instruction imposing a culpable mental state for Count 5 because such an instruction was not warranted under Ohio law. In his Traverse, Holloway asserts he is entitled to relief on this claim because he believes Ohio law does, in fact, require a jury to find a *mens rea* element of recklessness with respect to this charge. (Doc. No. 12 at 10-14.)

Holloway's argument is without merit. It is well-established that a state court's interpretation of state law binds a federal court sitting in habeas corpus. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Estelle*, 502 U.S. at 67-68. The Sixth Circuit has noted this principle encompasses a state court's interpretation of the propriety of a jury instruction under state law. *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012). Because the state appellate court found the trial court's instructions on the discharge of a firearm charge to be correct statements under Ohio law, the Court finds any failure on appellate counsel's part to raise this issue cannot have been deficient performance under the first prong of *Strickland*. *See, e.g., Harwell v. Schweitzer*, 2016 WL 6277859 at * 17 (S.D. Ohio Oct. 27, 2016). Moreover, the Court cannot find that the jury instructions at issue rendered Holloway's trial fundamentally unfair.

Accordingly, the Court finds the state appellate court reasonably determined appellate

41

counsel was not ineffective for failing to challenge the trial court's jury instruction regarding the discharge of a firearm charge.  It is therefore recommended Holloway's fifth ground for relief be denied.

      **b.**       **Ground Six**:  **Ineffective Assistance of appellate counsel based on failure to challenge trial court's omission of a unanimity instruction**

In Ground Six, Holloway asserts appellate counsel was ineffective for failing to argue on direct appeal that he was denied due process of law when the trial court did not require unanimity in the verdict as to which theory defendant was found guilty.  (Doc. No. 12 at 6-10.) Specifically, Holloway argues the trial court "instructed the jury on all of the offenses as if each defendant was a principal offender" and failed to give an aiding or abetting or complicity instruction.  (Doc. No. 9-1 at Exh. 15, Page ID#250).  He further asserts the trial court "at no point informed the jury that they must be unanimous as to which theory they are considering or would be returning a verdict of guilty." (*Id.*)  Holloway argues appellate counsel was ineffective in failing to raise this issue on direct appeal.

Holloway raised this claim in his 26(B) Application to the state appellate court and again on appeal to the Supreme Court of Ohio.  (Doc. No. 9-1 at Exhs. 15, 19.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 17} Holloway's fifth assignment of error is that
>
> > Defendant was denied due process of law when the court did not require unanimity in a verdict as to which theory defendant was found guilty.
>
> {¶ 18} Holloway, through his fifth proposed assignment of error, argues that the trial court erred by failing to instruct the jury that unanimity was required as to any offense of which he was found guilty.  In addition, Holloway argues that the trial court failed to instruct the jury on complicity.

42

{¶ 19} The Supreme Court of Ohio has established that a trial court does not commit error by failing to specifically instruct the jury that it is required to reach a unanimous verdict as whether a defendant was the principal offender or an aider and abettor to the offense of aggravated murder, because the defendant could have been convicted as the principal offender or as an aider and abettor:

> 'In proposition of law four, appellant claims that the trial court erred in failing to specifically instruct the jury that it must find by unanimous verdict that appellant was either the principal offender or, if not the principal offender, that appellant was an aider and abettor. We note that appellant failed to object to the instruction and thus has waived all but plain error.  Appellant asserts that, pursuant to *State v. Johnson* (1989), 46 Ohio St.3d 96, 104, 545 N.E.2d 636, 644, if a single count of the indictment can be divided into two or more distinct conceptual groupings, the jury must be specifically instructed that it must unanimously conclude that the defendant committed acts falling within one particular grouping in order to reach a guilty verdict.  Our response to appellant's argument is threefold.

> First, in *Johnson* we indicated that a specific instruction is necessary when there exists the possibility of a "patchwork" or less than unanimous verdict. *Id*. at 105, 545 N.E.2d, at 645. *Johnson* involved an R.C. 2929.04(A)(7) specification, which requires a finding of either principal offender or prior calculation and design before death can be imposed. In contrast, the specification at issue here, R.C. 2929.04(A)(4), requires only that the murder was perpetrated by appellant while he was a prisoner in a detention facility. R.C. 2929.04(A)(4) makes no distinction between principal offender and aider and abettor.

> Second, appellant could be convicted of aggravated murder under R.C. 2903.01(A) as a principal offender, or as an aider and abettor, pursuant to R.C. 2923.03(A). R.C. 2923.03(F) also provides that appellant could be punished as an aider and abettor as if he were the principal offender.

> Our third response centers on appellant's additional contention that the failure of a specific instruction deprived him of his right to a reliable sentencing hearing. Appellant contends that such failure prevented defense counsel from asserting, and the jury from considering, the mitigating factor in R.C. 2929.04(B)(6), which permits the jury to consider a defendant's aider and abettor status. However, we find no error, since the evidence was substantial that appellant was a principal offender.  There was substantial testimony

43

> that the shank in appellant's possession caused two of Watkins's six fatal wounds.  We have previously stated that "principal offender" means the "actual" killer and not the "sole" offender.  As there can be more than one actual killer, there can thus be more than one principal offender.  *State v. Keene* (1998), 81 Ohio St.3d 646, 655, 693 N.E.2d 246, 256.  Accordingly, we find that appellant has not met his burden under the plain error standard and we reject his fourth proposition of law.'

*State v. Stojetz*, 84 Ohio St.3d 452, 705 N.E.2d 329 (1999), at 455.

{¶ 20} Therefore, Holloway has failed to establish any prejudice through his fifth proposed assignment of error.

*State v. Holloway*, 2015 WL 6778526 at * 4-5.

For the following reasons, the Court finds this ground for relief is without merit.  As an initial matter, the Court notes Holloway is incorrect that the state trial court failed to give a complicity instruction.  In fact, the record reflects the trial court specifically instructed the jury as follows:

> THE COURT:  Ladies and gentlemen, I inadvertently left out of this -- if you can believe I left anything out after that winded speech -- a criminal responsibility or complicity charge.
>
> Where two or more persons enter upon common criminal enterprise, what each does in the execution of a common purpose is the act of all and if another crime is committed by one of them in attempting to accomplish the criminal purpose, any one of them, thus aiding and abetting is equally guilty of the crime with the one who did the act.  If such aider and abettor is intended that the crime should be committed if necessary to accomplish the common criminal purpose.
>
> An accomplice must perform some act to facilitate the commission of the principal offense.  Any encouragement, assistance, counseling or command is sufficient.  A person's mere association with the principal offender is not enough to sustain a conviction based on aiding and abetting.  There must be some level of active participation by way of providing assistance or encouragement.  Mere approval or acquiescence without expressed concurrence or doing of something contributing to an unlawful act is not aiding and abetting of the act.
>
> Aid means to help, assist, or strengthen. Abet means to encourage, counsel, incite

44

or assist.

(Doc. No. 9-7 at Tr. 1264-1265.)

The Court further finds the state appellate court reasonably determined appellate counsel was not ineffective for failing to challenge on direct appeal the trial court's omission of a unanimity instruction as to whether Holloway was the principal offender or an aider or abetter. District courts faced with the same issue have concluded that "[n]either state law[16] nor federal law imposed such a requirement." *Stojetz v. Ishee*, 2014 WL 4775209 at * 46 (S.D. Ohio Sept. 24, 2014) (rejecting habeas petitioner's argument that trial counsel should have "insisted that the trial court give an instruction requiring the jury to find unanimously either that Petitioner was the principal offender or an aider or abettor."). Indeed, in *Lewis v. LaRose*, 2017 WL 6461821 at * 7 (N.D. Ohio Dec. 19, 2017), the Court recently considered and rejected this argument as follows:

> With respect to his sixth ground, Petitioner cites to *Schad v. Arizona*, 501 U.S. 624 (1991), *Richardson v. United States*, 526 U.S. 813 (1999), and *McKoy v. North Carolina*, 494 U.S. 433 (1990) to argue that the state trial court unconstitutionally failed to instruct the jury that it must unanimously agree whether he was an aider and abettor or a principal offender in the commissions of the underlying offenses. [footnote omitted].
>
> However, these cases do not support Petitioner's arguments. [Footnote 108: *See Schad*, 501 U.S. at 631–32 (finding that jurors need not unanimously agree on the means of the commission of a crime); *Richardson*, 526 U.S. at 817 (same); *McKoy*, 494 U.S. at 433 (finding unconstitutional North Carolina's unanimity requirement for mitigating factors in capital cases).] In the federal context, "where there are charges of drug possession with intent to distribute based on both liability as a principal and as an aider and abettor, a specific unanimity instruction is not needed

---

[16] *See e.g., State v. Horton*, 2014 WL 2931822 at * 3-4 (Ohio App. 10th Dist. June 26, 2014) (in aggravated murder case, finding "the lack of a specific instruction that the jury must reach a unanimous verdict as to whether appellant was the principal offender or an aider and abettor does not constitute plain error.") (citing  cases).

45

> simply because the government presents multiple factual scenarios and theories of liability to prove the commission of a single offense." [Footnote 109: *United States v. Riley*, 410 Fed.Appx. 963, 967 (6th Cir. 2011) (quotations omitted); *see also Lampkins v. Gagnon*, 710 F.2d 374, 377–78 (7th Cir. 1983) (finding Wisconsin's participation statute, which does not differentiate among liability theories for offense participation, did not require jury to unanimously agree on theory of participation).] Similar to the federal context, Ohio treats principal liability and aiding and abetting liability as two separate theories to prove the commission of the single offense. [footnote omitted].  Therefore, the lack of a unanimity instruction here is not a federal constitutional violation.

*Lewis*, 2017 WL 6461821 at * 7.

Moreover, the Court notes that, although the trial court did not expressly instruct the jury that it was required to be unanimous as to whether Holloway was the principal offender or an aider and abettor, the court generally instructed the jury that it was required to reach a unanimous verdict on each charge.  (Doc. No. 9-7 at Tr. 1258) ("Now, ladies and gentlemen, because this is a criminal case, all 12 of you must be in agreement before you can consider that you have reached a verdict.")  The trial court also expressly required the jury to conclude that Holloway possessed the requisite intent in order to find him guilty of the aggravated murder, murder, and felonious assault charges.  (Doc. No. 9-7 at Tr. 1239-1241, 1247-1248, 1251-1252.)  Thus, the Court cannot find appellate counsel was deficient in failing to raise this issue on direct appeal.[17]

---

[17] Even if the Court were to find that appellate counsel should have raised this issue on direct appeal, Holloway cannot show prejudice; i.e., "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the instant case, the issue was not whether it was Holloway or Malone who shot Stratford.  Rather, Holloway's defense was focused on discrediting Prude's identification of Holloway as the shooter, as well as attacking the credibility of the testimony of Young and Smith.  As noted above, the State presented evidence (including video surveillance footage of the actual shooting and Prude's testimony) that it was Holloway that approached Stratford from behind and shot and killed him.  In light of this evidence, Holloway has not demonstrated the result would have been different had appellate counsel challenged the trial court's

Read in context and as a whole, the Court cannot find the jury instructions at issue rendered Holloway's trial fundamentally unfair.  Accordingly, the Court finds the state appellate court reasonably determined that, even if appellate counsel had raised an argument alleging trial court error in instructing the jury in this regard, it is not reasonably probable that that argument would have succeeded.  It is therefore recommend the Court find Holloway's sixth ground for relief is without merit.

**C.      Procedurally Defaulted Claims**

**1.      Grounds Two and Three**

Grounds Two and Three allege trial court error on the basis of the allegedly incorrect jury instructions discussed above.  Specifically, Ground Two alleges the trial court erred in failing to include a jury instruction that required unanimity as to whether Holloway was the principal offender or an aider or abettor as to each of the charged offenses.  (Doc. No. 1 at 6.) Ground Three alleges the trial court erred in failing to include a *mens rea* of recklessness in the jury instruction regarding the discharge of a firearm charge.  (*Id*. at 8.)

Respondent claims each of these Grounds are procedurally defaulted because they were not raised on direct appeal.  Respondent asserts that, although Holloway raised these claims in his Rule 26(B) Application, this is not sufficient to fairly present the underlying claims to the state courts.  (Doc. No. 9 at 24-25, 29-30.)

The Court finds Grounds Two and Three are procedurally defaulted.  Holloway did not raise these claims on direct appeal to the state appellate court.  While he did raise ineffective

---

omission of a unanimity instruction as to whether he was the principal offender or an aider or abettor.

47

assistance of appellate counsel claims relating to appellate counsel's failure to raise these jury instruction arguments on direct appeal, this does not preserve Grounds Two and Three as set forth in Holloway's Petition for federal habeas review.  Indeed, it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "Murnahan" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles. *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.

*Stojetz v. Ishee*, 389 F.Supp.2d 858, 898–99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Enyart v. Coleman*, 29 F. Supp.3d 1059, 1098 (N.D. Ohio 2014); *White v. Shewalter*, 2012 WL 2711463 at *10 (N.D. Ohio March 14, 2012) *report and recommendation adopted by* 2012 WL 2741551 (July 9, 2012).  Thus, Holloway's App. R. 26(B) Applications did not preserve his underlying trial court error claims for habeas review.

In light of the above, the Court finds Grounds Two and Three of Holloway's Petition are procedurally defaulted.

48

### a.      Cause and Prejudice

Holloway may nevertheless obtain a merits review of these claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  In his Traverse, Holloway argues the ineffective assistance of his appellate counsel constitutes cause and prejudice to excuse the default.  (Doc. No. 12 at 4.)

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004); *Smith v. Ohio, Department of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Correctional Facility*, 2016 WL 4177174 at * 3 (N.D. Ohio Aug. 8, 2016).  However, a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.  *See Moore,* 708 F.3d at 776; *Davie*, 547 F.3d at 312; *Berry*, 2016 WL 4177174 at *3.  Thus, if a state court rejects an ineffective assistance of appellate counsel claim on the merits, a petitioner's default may not be excused on the basis of appellate counsel's failure to raise the underlying claim on direct appeal.  *See Moore*, 708 F.3d at 776-777 ("Moore cannot show ineffective assistance of his appellate counsel for failing to raise the issue on appeal because the underlying claim lacks merit.  *Davie*, 547 F.3d at 312.  The state court did not unreasonably apply *Strickland* in so holding. The claim is procedurally defaulted and that default is unexcused."); *Berry*, 2016 WL 4177174 at * 3.

As set forth *supra*, the state appellate court considered Holloway's claims of ineffective

assistance of appellate counsel on the merits as set forth in his App. R. 26(B) Application and rejected them.  This Court determined, above, that the state appellate court's rejection of these claims was reasonable.  Accordingly, and because the state court reasonably determined Holloway's appellate counsel was not ineffective for raising these underlying jury instruction claims, the Court finds Holloway has not satisfied the cause requirement to overcome his default of Grounds Two and Three.  *See e.g., Moore,* 708 F.3d at 778 ("That procedural default is not excused because even if his appellate counsel had raised the issue, the underlying claim was meritless."); *Warren v. Smith*, 2010 WL 2837001 at * 9 (N.D. Ohio April 29, 2010) (finding petitioner did not establish cause to excuse the default of habeas claim because state appellate court considered petitioner's 26(B) Application on the merits and determined appellate counsel was not deficient for failing to raise issue on direct appeal).  Moreover, even assuming Holloway could demonstrate cause to excuse the default of Grounds Two and Three, the Court finds he has not set forth any evidence of actual prejudice.  *See Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir.2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default").

Accordingly, and for all the reasons set forth above, the Court finds Holloway has failed to establish cause and prejudice to excuse the default of Grounds Two and Three.

### b.    Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386,

124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Here, Holloway has not identified any new and reliable evidence of actual innocence that was not presented at trial. Accordingly, the Court finds he has failed to demonstrate that the procedural default of Grounds Two and Three should be excused on the basis of actual innocence. It is therefore recommended Grounds Two and Three be dismissed as procedurally defaulted.

### 2. Ground Four

In his fourth ground for relief, Holloway argues the trial court erred in failing to sever his case from that of his co-defendant, Jamal Malone. (Doc. No. 1 at 9.) Holloway does not provide any further argument in support of this claim, either in his Petition or Traverse.

Respondent argues this claim is procedurally defaulted, non-cognizable, and fails on the merits. (Doc. No. 9 at 34-42.) With regard to procedural default, Respondent asserts the state appellate court reviewed this issue for plain error, which he maintains "is an enforcement, not a waiver, of procedural default." (*Id*. at 36.) Respondent further claims Holloway cannot show

51

either cause or prejudice to excuse the default.  (*Id.* at 37.)

Holloway raised this claim on direct appeal to both the state appellate court and the

Supreme Court of Ohio.  The state appellate court rejected this claim, as follows:

{¶ 21} In the first assignment of error, Holloway argues that the trial court erred when it joined his trial with Malone's trial.  Specifically, he argues his defense and Malone's defense were antagonistic because the state's theory was that Malone killed Stratford as revenge for an earlier attack and mugging where Malone was the victim.  Since Holloway was not a victim to the mugging, he contends that any defense that he was not at the scene and had no involvement in this homicide, would be detrimental because of his ties to Malone.

{¶ 22} We note that it is well established that the law and public policy generally favor the joinder of charges and defendants, which involve the same acts, transactions, or course of criminal conduct.  Crim.R. 8; *State v. Dunkins*, 10 Ohio App.3d 72, 460 N.E.2d 688 (9th Dist.1983), syllabus.  This court has stated that joinder of defendants and the avoidance of multiple trials is favored in the law because it " 'conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries.'"  *State v. Thompson*, 127 Ohio App.3d 511, 523, 713 N.E.2d 456 (8th Dist.1998) quoting *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).  Relief from such joinder is available under Crim.R. 14 upon a demonstration of prejudice by the defendant. *State v. Harris–Powers*, 8th Dist. Cuyahoga No. 87921, 2007–Ohio–389, ¶ 17, citing *State v. Owens*, 51 Ohio App.2d 132, 366 N.E.2d 1367 (9th Dist.1975).

{¶ 23} Initially, we note that Holloway did not to object to the joinder of his trial at any stage of the proceedings.  A party waives any claim of error concerning the joinder by failing to raise an objection to the joinder.  *Id*.  " 'A motion for severance due to prejudicial misjoinder * * * must be renewed at the close of the state's case or at the conclusion of all the evidence and unless made at that time, it is waived.' "  *Id*., quoting *Owens* at paragraph two of the syllabus.  See also Crim.R. 8(B).  Thus, Holloway has waived all but plain error. *State v. Hughes*, 8th Dist. Cuyahoga Nos. 98667 and 98668, 2013–Ohio–1550, ¶ 25, citing *Owens* at 146.

{¶ 24} In reviewing the record, we are unable to find that Holloway suffered any prejudice as a result of the joinder.  Malone's defense centered on inculpating Prude and Jemeal Evans ("Evans"), the individual Gamez thought was responsible for the murder.  Evans is also known as "Mal" and was dating Stratford's ex-girlfriend at the time of the murder.  Malone tried to inculpate Prude by

52

pointing out his history of driving Malone's Chevy Impala.  Malone tried to inculpate Evans by pointing out Gamez's allegations on the night of the murder, the prior relationship between Evans's girlfriend and Stratford, and Evans owning a car similar to the one used in Stratford's murder.  Conversely, Holloway's defense focused on discrediting Prude, who identified Holloway in the surveillance video, and Young and Smith, Holloway's cellmates from the county jail who testified to Holloway confessing his involvement in Stratford's murder.  At no point in trial did Holloway or Malone attempt to inculpate each other.

{¶ 25} Holloway further argues the prejudicial effect of the joinder was evident by the trial court's statement that: "[t]his should have been two trials. We should have bifurcated this, to avoid this exact problem. But regardless, pare it down and we'll go."  The court made this comment during the discussion among defense counsel for Malone and Holloway and the prosecutor regarding Smith's testimony.

{¶ 26} Prior to Smith testifying, Malone objected to any testimony regarding the conversation Smith witnessed between Holloway and Malone inside county jail. Malone's objection focused on his inability to effectively cross-examine Smith concerning the contents of the conversation between Holloway and Malone. This objection was overruled by the trial court after the state indicated it would pare down Smith's testimony and not ask any questions about the content of the conversation between Holloway and Malone.  The state provided the trial court with a list of questions intended for Smith.  After hearing the list of questions, the trial court said: "[t]hat's—okay, that's fine. Exactly like that? Okay. All right." By paring down Smith's testimony, the basis of Malone's objection was moot.  As a result, Holloway failed to demonstrate any prejudice by the joint trial.  Therefore, we find that the joinder was proper.

*State v. Holloway*, 2015 WL 1255788 at * 5.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection.  *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule).  The Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir.2005), and that plain-error review is not inconsistent with the procedural default."  *Awkal v. Mitchell*, 613 F.3d 629, 648–649 (6th Cir.2010) (citing *Lundgren*, 440 F.3d at 765); *Hinkle v. Randle*, 271 F.3d

239, 244 (6th Cir.2001). "The state court's plain error review did not constitute a waiver of the

procedural default." *Mason v. Brunsman*, 483 Fed. Appx. 122, 130–31 (6th Cir.2012). *See also*

*Shafer v. Wilson*, 364 Fed. Appx. 940, 945 (6th Cir.2010) (finding the State of Ohio expressly

enforced its contemporaneous objection rule where "the last state court to render a reasoned

opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object,

applied plain-error review, and denied [appellant's] claims for relief.")

Here, Holloway does not provide any argument regarding this claim in either his

Petition or Traverse.  Notably, he does not challenge Respondent's argument that this claim is

procedurally defaulted, nor does he argue there is cause and prejudice to excuse the default.

Thus, Respondent's argument that Ground Four is procedurally defaulted is essentially

unopposed.

As the state appellate court correctly noted, Holloway did not object to the joinder of his

and Malone's trial at any stage in the proceedings.  Accordingly, the first three elements of

*Maupin* test are satisfied as Holloway failed to comply with the contemporaneous objection

rule, the state appellate court actually enforced the rule,[18] and the rule constitutes an

---

[18] Holloway does not argue this claim is not defaulted because the state appellate court went
on to address the merits of his joinder claim.  Even if he had, this argument would be without
merit.  The Sixth Circuit has held that a state court may actually enforce its procedural
sanction and still review the merits of the case, as long as the decision on the merits is
considered an alternative holding. *See Bowling v. Parker*, 344 F.3d 487 (6th Cir. Sept.17,
2003).  *See also Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308
(1989) (a state court "need not fear reaching the merits of a federal claim as an alternative
holding."); *Gooden v. Jeffreys*, 2005 WL 2002362 (N.D. Ohio 2005). Here, the record
reflects the state appellate court enforced the procedural rule at issue (i.e., the
contemporaneous objection rule) since the state appellate court explicitly stated the claim
would be reviewed for plain error due to Holloway's failure to object. *See also Bacon v.
Klee,* 2016 WL 7009108 at * 6 (6th Cir. Nov. 30, 2016) ("While the state trial court also
addressed the merits of Bacon's claims, this review does not compromise the state trial

"independent and adequate" state ground on which the state can foreclose federal review.  As such, and in the absence of any meaningful opposition on this issue, the Court finds Ground Four of the instant Petition is procedurally defaulted.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin*, 434 F.3d at 417 (quoting  *Carrier*, 477 U.S. at 488.  Here, Holloway has neither presented any cause for his default nor has he alleged ensuing prejudice or a manifest miscarriage of justice.  In addition, Holloway has not presented a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground Four be dismissed as procedurally defaulted.

### V. Conclusion

For all the reasons set forth above, it is recommended the Petition be DENIED.


Date:  June 26, 2018                                      _s/ Jonathan Greenberg_
                                                         Jonathan D. Greenberg
                                                         United States Magistrate Judge


### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of**

---

court's procedural default ruling.")

55

**Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**